# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NORMA MELGOZA ) | |
| ) | Case No. 17 C 6819 |
| Plaintiff, ) | |
| ) | Hon. Gary Feinerman |
| v. ) | |
| ) | Magistrate Judge Gabriel A. Fuentes |
| RUSH UNIVERSITY MEDICAL ) | |
| CENTER, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Norma Melgoza ("Plaintiff") brings a motion to compel Defendant Rush University Medical Center ("Defendant" or "Rush") to produce, in response to Rule 34 document requests, (1) a mask purporting to depict the face of President Donald J. Trump ("the Donald Trump Mask" or "the Mask"), and (2) a pay equity report dated February 24, 2017 and created for Defendant by the consulting firm Arthur J. Gallagher & Co. ("the Gallagher Report"). After the June 13, 2019 oral argument on Plaintiff's Motion to Compel (D.E. 112) ("the Motion"), the Court took the Motion under advisement and ordered that the Defendant preserve the Donald Trump Mask. For the reasons stated below, the Motion is granted as to the Donald Trump Mask and entered and continued as to the Gallagher Report, pending Defendant's submission of additional information before the close of business on June 21, 2019 as requested by the Court during a telephonic status hearing on June 14, 2019.

## DISCUSSION

### I. Discoverability of the Donald Trump Mask

#### A. Background

Plaintiff has alleged, as part of her Equal Pay Act "glass ceiling" claim, that Defendant's relevant conduct included an incident in which, she alleges, she was interviewing for a position as cancer center administrator for Defendant. During an interview with one of Defendant's doctors, she alleges the doctor wore "a Donald Trump mask" (the "Donald Trump Mask"), an act she described as "humiliating and offensive" to her, insofar as she inferred from this alleged act that the doctor (and, by extension, Defendant) "did not take her or her position seriously and thought nothing of impersonating a man who publicly antagonized Melgoza's community and many members of her gender."[1] Plaintiff's Motion to Compel (D.E. 112) at 2. Plaintiff describes the Donald Trump Mask as "vital" to proof of her claims in this matter, *id.*, and at oral argument, Plaintiff's counsel affirmed that upon discovery of the Donald Trump Mask, he may seek to introduce it as evidence at trial. (Counsel for Plaintiff and Defendant agreed at oral argument that the admissibility of the Donald Trump Mask at trial is not before this Court – only its discoverability.)

According to the information proffered by Plaintiff, and supported by deposition testimony attached to the Motion, Defendant conducted an internal investigation of Plaintiff's allegation that the doctor had donned the Donald Trump Mark during his interview of Plaintiff, and as a result of the investigation, Defendant's investigators obtained possession of three masks from the doctor's office, including the Donald Trump Mask, along with masks of former Illinois Gov. Rod

---

[1] At oral argument, Plaintiff's counsel represented that Plaintiff was Defendant's only Mexican-American executive. The Court in this Order is making no findings and expressing no opinion on the President and his actions. We focus solely upon Plaintiff's allegations and her ability under Rules 26 and 34 to discover information she seeks to prove her allegations in court in this matter.

2

Blagojevich and former Chicago Mayor Rahm Emanuel. Motion, Ex. D (Schopp Dep.at 194-201). At the conclusion of the investigation, Defendant returned all three masks to the doctor and "asked him to remove them from the environment" because the masks "had no place at Rush." *Id.* (Schopp Dep. at 198, 199). For its part, the record on the Motion indicates that the investigation's findings "were not consistent with the allegations; and specifically what I recall is the description of the mask was inconsistent with what we found to be the actual look of the mask." *Id.* (Schopp Dep. at 200).

In a Rule 34 document request timely served within the discovery period, Plaintiff sought "[a]ny and all Documents and ESI relating or referring to Rush's investigation into Dr. Decrease wearing a Donald Trump Mask during Plaintiff's interview for the Cancer Service Line Administrator position." Motion, Ex. A, Doc. Req. No. 28. Plaintiff defined "documents," in that request, as follows in relevant part:

> 'Documents' is used in the broadest possible sense and shall mean and refer to all written, printed, electronic, typed, graphic, recorded or illustrative matter, computer memory, tapes, *or any other tangible thing by which information is contained, stored or displayed, of every kind or description, however produced or reproduced* . . . .

*Id.*, Def. No. 6 (emphasis added).

Defendant has resisted producing the Donald Trump Mask. In written communications to Plaintiff's counsel (Motion, Ex. B, ¶ 12) and in oral argument before the Court through its counsel, Defendant has contended that it need not produce the Donald Trump Mask because Plaintiff never asked for it, or did not ask for it specifically enough, in her Rule 34 document request. As counsel made clear at oral argument, Defendant contends that the definition of "documents" in Plaintiff's Rule 34 document request does not expressly ask for "tangible things," except for "tangible things by which information is contained," meaning that if a tangible thing contains, for example, a data

compilation or some form of ESI, Defendant believes that such tangible thing was specifically requested. But Defendant construes this definition, notwithstanding the specificity of Request No. 28 (asking, as it does, for "Documents" relating to Defendant's investigation of the alleged Donald Trump Mask incident) as excluding the Donald Trump Mask. When the Court proposed that it consider extending the discovery period (which is to close on June 14) by 30 days to allow Plaintiff to serve a new document request asking for discovery of the Donald Trump Mask specifically and leaving no room at all for argument as to whether it is being requested, Defendant objected and said the additional time for discovery would impose burdens and inconveniences on Defendant.

### B. Discussion

Rule 34 of the Federal Rules of Civil Procedure prescribes a procedure for both sides to produce, on request, documents or tangible things. Rule 34 discovery shall be within the scope of Rule 26(b), which, per the 2015 amendments, allows discovery of:

> all non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Information within this scope of discovery need not be admissible in evidence to be discoverable.*

Fed. R. Civ. P. 26(b)(1) (emphasis added). In describing what discovery parties may obtain through a Rule 34 document request, Rule 34 refers to:

> (A) "any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or date compilations – stored in *any medium from which information can be obtained* either directly or, if necessary, after translation by the responding party into a reasonably usable form"; or
>
> (B) *"any designated tangible thing."*

4

Fed. R. Civ. P. 34(a)(1) (emphasis added). Importantly, Rule 34(a)(1)(A) is the product of the 2006 amendments to Rule 34, addressing the increased prevalence of electronically stored information. As Rule 34's commentary makes clear, the purpose behind the 2006 amendments was to clarify "that Rule 34 applies to information that is fixed in a tangible form and to information that is stored in a medium from which it can be retrieved an examined." Fed. R. Civ. P. 34, 2006 Amendment commentary, subdivision (a). The Committee further described the 2006 amendments' purpose as avoiding the "obvious[]" impropriety of "allow[ing] a party to evade discovery obligations on the basis that the label had not kept pace with the changes in information technology." *Id.* Accordingly, the Committee described Rule 34 as taking an "expansive approach" to the breadth of what type of information is discoverable. *Id.* The 2006 commentary, and the Rule itself, can be fairly read as disfavoring any approach that places form over substance and thus defeats discovery requests well within the heartland of discoverable information under Rules 26 and 34.

More on that later.

In addition, our Court has disfavored crabbed discovery approaches that beget inefficiency and waste. For example, in *United States ex rel. Ceas v. Chrysler Group LLC*, 191 F. Supp. 3d 885 (N.D. Ill. 2016) (Dow, J.), the Court rejected a defendant's request for a protective order that would have compelled the plaintiff to return documents he possessed as a result of his accessing a database that the defendant said was proprietary. The Court noted that even if it were to order the plaintiff to return the documents, the plaintiff "could simply request those very same documents through discovery," so that compelling him to return the documents only to have the defense send them back to him "would be an unnecessary inefficiency for both parties, and would run contrary to the purpose of Rule 26." *Id.* at 888. Judge Dow in *Ceas* cited Rule 1, which is also relevant

here, insofar as it provides that the Rules of Civil Procedure "'should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.'" *Id.*, quoting Fed. R. Civ. P. 1.

Finally, the Court has wide discretion with respect to discovery matters, including the settling of discovery disputes, determining the scope of discovery, and otherwise controlling the manner of discovery. *See United States ex rel. Conroy v. Select Medical Corp.*, 307 F. Supp. 3d 896, 901 (S.D. Ind. 2018) (Lynch, M.J.), *citing Thermal Design, Inc. v. American Soc'y of Heating, Refrigerating and Air-Conditioning Engrs., Inc.*, 755 F.3d 832, 839 (7th Cir. 2014); *see also Homeland Ins. Co. of New York v. Health Care Serv. Corp.*, 330 F.R.D. 180, 182 (N.D. Ill. 2019) (Feinerman, J.) ("'[D]istrict courts have broad discretion in discovery matters'"), *quoting James v. Hyatt Regency Chi.*, 707 F.3d 784 (7th Cir. 2013).

### C.     Analysis

Plaintiff's motion to compel production of the Donald Trump Mask for inspection under Rule 34 is granted.

#### 1.     Production of the Donald Trump Mask Is Within the Spirit of Request No. 28.

Defendant's reading of Plaintiff's Document Request No. 28 is not entirely faithful to the spirit of the language of the request. The spirit of the request is a desire for all documents relating to Defendant's investigation of the alleged donning of the Donald Trump Mask. At some point during the discovery period, Plaintiff apparently realized that the Mask had not been produced, that Plaintiff wanted or needed it produced, and that is was appropriate to communicate to Defendant's counsel that Plaintiff believed it should be produced in response to Request No. 28. It does not matter how much of the discovery period passed before Plaintiff, before discovery closed, communicated to Defendant that Plaintiff considered the Mask responsive to Request No.

28 and was demanding its production. Very frequently, counsel in a litigation matter will realize that a particular document or tangible thing falls within the scope of a document request – read broadly – and has not been produced. Specifically requesting such a document is perfectly appropriate. And that is what happened here, notably after Plaintiff adduced deposition testimony about the alleged donning of the Donald Trump Mask. In any case, the Mask is certainly relevant to Plaintiff's allegation that an executive of Defendant put it on during an internal promotion interview, in a way that Plaintiff alleges was harmful to her. The Court's conclusion that Plaintiff sought "documents" that could include the Mask is not a strained interpretation of Request No. 28.

### 2. Production of the Donald Trump Mask Is Within the Letter of Request No. 28.

Defendant's argument that Plaintiff's reference to "tangible things" within her definition of "documents," in the set of requests containing Request No. 28, is a creative but meritless attempt to exclude the Donald Trump Mask from the request. Definition No. 6 begins with these words: "'Documents' is used in the broadest possible sense *and* shall mean . . . .'" Motion, Ex. A, Def. No. 6. By relying on a crabbed reading of the words "any other tangible thing by which information is contained, stored or displayed, of every kind or description . . . ." (*id.*), Defendant overlooks how those words follow the "and" that comes after Plaintiff's definition of "document" as "used in the broadest possible sense." When construed in the broadest possible sense, "documents" include "tangible things" that are within the scope of Rule 26(b) discovery, and that is why Rule 34 allows for production and inspection of such tangible things.

Even if the Court were to countenance Defendant's overly narrow reading of the definition of "documents" to include only *some* tangible things and not the Donald Trump Mask, when the Mask is obviously relevant to Plaintiff's claim and within the scope of what Request No. 28 seeks to have produced, the Court would still find the Mask responsive. The Mask is a "tangible thing

by which information is contained." Again, Definition No. 6 called for the word "document" to be construed "in the broadest possible sense." That would include our broad conception of the term "information," which, by the way, is further described in Definition No. 6 as information "of every kind or description." Every kind of information, or every description of it, includes "something told or facts learned; news or knowledge" – the very definition of "information." Webster's New World Dictionary ("Webster's") 311 (Warner Books Ed. 1984). "Information" has been defined that broadly for a very long time. *See* The Winston Dictionary, College Edition ("Winston") 503 (P.F. Collier & Son 1939) (defining "information" as "knowledge given or acquired," and "valuable or timely knowledge, especially of facts"). "Contain" means to "have" or "hold," or to "include." Webster's at 136; Winston at 210.

The Court finds that the Donald Trump Mask "contains" the "information" about what the Mask is and what it looks like, in a matter in which Defendant's investigation into the alleged donning of the Mask is said to have identified purported inconsistencies between (a) Plaintiff's statements about the Mask's appearance and what Defendant "found to be the actual look of the mask," and (b) Plaintiff's statements about "the way in which the mask was put on and taken off" and Defendant's "experience with the mask, which is why we took it to kind of play with it, put it on, take it off, put it on, take it off." Motion, Ex. D (Schopp Dep. at 200-01).

Having conducted its own inspection as part of Defendant's investigation into whether the doctor donned the Donald Trump Mask, Defendant will not now be heard to deny Plaintiff the same inspection, particularly where Plaintiff timely and fairly asked for it in discovery.[2]

---

[2] The Parties have acknowledged, and are reminded, that this Order is not a determination of whether the Donald Trump Mask is admissible at trial. The Court rules today only that it is discoverable and must be produced in response to Plaintiff's Request No. 28.

8

### 3. Permitting Inspection of the Donald Trump Mask Is Consistent with a Reasonable Application of Rules 26 and 34, and with Promoting Efficiency in Discovery.

As noted above in Part I, the Court applies the discovery rules to avoid "unnecessary inefficiency." *Ceas*, 191 F. Supp. 3d at. at 888. Denying Plaintiff's motion to compel production of the production of the Donald Trump Mask would lead to that very evil. As the Court indicated at the June 13, 2019 hearing, Defendant's position that discovery of the Mask ought to be denied because Plaintiff failed to ask for it, if accepted, would likely lead the Court to consider whether, "to secure the just . . . determination" of this action, Fed. R. Civ. P. 1, the Court would enter a short, 30-day discovery extension for the sole purpose of allowing Plaintiff to propound a new document request that avoids Defendant's hyper-technical – and wrong – reading of Request No. 28 and Definition No. 6. Defendant's basis to resist discovery of the Donald Trump Mask would then have even less merit. But that would be a waste of time and resources. It would be like the approach, rejected by this Court in *Ceas*, of forcing a party to return to its adversary documents that the party purportedly was not supposed to have, only to see the adversary return the documents to the first party pursuant to a proper Rule 34 document request. And Defendant expressed a concern about how making such an accommodation for Plaintiff would impose on Defendant an unfair burden by prolonging discovery in this matter. So granting Plaintiff's motion to compel production of the Mask makes the most sense.

Moreover, Defendant's reading of Request No. 28 and Definition No. 6 turns Rule 34 on its head. The 2006 amendments to the rules specifically sought to head off litigants from construing the term "documents" so narrowly as to avoid producing responsive information contained or stored in a different medium, namely in an electronic format. Yet Defendant seeks a very similar avoidance here, arguing that "tangible things" as described in Definition No. 6 would

include a "thing" in which a data compilation is stored, but not a "thing" such as an item whose inspection minimally would reveal identifying information about that item – in a case where such identifying information is in dispute. Plaintiff's definition of "documents" as a term "used in the broadest possible sense" probably should have ended this inquiry. Defendant's counsel zealously argued his client's position, but for the reasons we have stated, any further attempts to thwart production are ill-advised. Meanwhile, Plaintiff's characterization of the Donald Trump Mask as "vital" to proving her case, and the vigor with which Defendant sought to deny her discovery of the Mask, warranted a closer analysis of the discovery request, the Mask's responsiveness to it, and the broader principles set forth in the rules about how they ought to be applied.

In granting Plaintiff's motion to compel production of the Donald Trump Mask, the Court will order Defendant, within seven calendar days of this Memorandum Opinion and Order (by the close of business on June 21, 2019), to produce the Donald Trump Mask to Plaintiff's counsel for inspection at a mutually agreeable location. The Court further reiterates its earlier Order that Defendant preserve and not destroy or discard the Donald Trump Mask. If Defendant has not preserved the Donald Trump Mask, or if the Mask has been discarded by any person, Defendant shall provide a written status report to the Court on June 25, 2019, as to the facts and circumstances surrounding Defendant's inability to comply with the Court's minute order of June 13, 2019, compelling preservation of the Mask.

## II. Discoverability of the Gallagher Report

The Court is entering and continuing Plaintiff's motion to compel production of the Gallagher Report.

A.  Background

Defendant has identified on a privilege log the Gallagher Report, dated February 24, 2017, and described as a "[r]eport commissioned and completed under the direction of Rush legal counsel for the purpose of providing legal advice." Motion, Ex. E. At a Rule 30(b)(6) deposition, Defendant's representative deponent described the engagement as occurring on or around 2016 "to help us redesign our compensation structure and assess equity across all broad-based compensation." *Id.*, Ex. C (30(b)(6) Dep. (Wallace) at 32). The deposition testimony made the purpose of the Gallagher Report sound a lot like business advice, so the Court, at the June 13, 2019 oral argument on the Motion, ordered the Report and related correspondence to be produced *in camera*. Defendant promptly produced these materials *in camera* on June 14.

The Court will not reveal the content of the communications of the materials produced *in camera* on June 14, but it immediately noted numerous indicia of attorney-client privilege insofar as: (a) the Report's having been communicated from the Gallagher firm to Defendant's in-house legal counsel, (b) an intent by Defendant and its in-house counsel to obtain the Gallagher Report for the purpose of rendering legal advice to Defendant, and (c) and intent to keep the Gallagher Report confidential. A September 21, 2016 letter from a Gallagher managing director to Defendant's senior associate general counsel, describing the scope of work anticipated in the Gallagher Report, is marked as attorney-client privileged and indicates that Gallagher did prepare the Gallagher Report at counsel's direction. The Gallagher Report itself is marked as "confidential and attorney-client privileged" on every page. Further language within the Gallagher Report indicates that its findings had a purpose tied to informing Defendant's counsel of pay equity issues in a way that would facilitate counsel in rendering legal advice to Defendant. When the Gallagher Report was transmitted to Defendant, it arrived via an email from the Gallagher firm managing

director to Defendant's senior associate general counsel and no other person. Other, privileged correspondence produced *in camera* indicated that subsequent to receiving the Gallagher Report, Defendant and its in-house counsel considered the Report to be a privileged document that counsel wished to keep confidential.

The Court, in a telephonic motion hearing held on June 14, 2019, requested that Defendant submit an affidavit or affidavits containing additional information, mainly designed (1) to confirm that any privilege attached to the Gallagher Report was not waived by Defendant not maintaining its confidentiality within legal counsel and persons in Defendant's "control group," and (2) to clarify whether the Gallagher Report was prepared predominately for the purpose of the rendering of legal advice to Rush by the counsel who engaged the Gallagher firm to prepare it, and who then received it from the Gallagher firm, notwithstanding the aforementioned Rule 30(b)(6) deposition testimony, to the extent this testimony may be construed to suggest that the purpose of the Gallagher Report was to convey business – and not predominately legal – advice to Rush. The Court also asked for Defendant for an *in camera* submission of engagement letter communications predating September 2016, and thus beyond those submitted *in camera* on June 14, 2019.

### B.     Discussion

To claim the attorney-client privilege over a document or communication, a party must establish: (1) that legal advice of any kind was sought, (2) from a lawyer in his or her capacity as such, (3) the communications related to that purpose (the rendering of legal services or advice), (4) the communications were made in confidence, (5) by the client or his agent, and (6) the privilege was not waived by disclosure to other persons outside the protection of the privilege. *See Stafford Trading, Inc. v. Lovely*, No. 05 C 4868, 2007 WL 611252, *2 (N.D. Ill. 2007) (Keys, M.J.), citing *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991); *United States v. BDO*

*Seidman, LLP,* 492 F.3d 806, 814-15 (7th Cir. 2003). Courts have held that the line between non-privileged business advice conveyed to a party or its counsel by a consultant, and privileged communications between counsel and a consultant relating to the rendering of legal services, is often discernible only upon a fact-intensive inquiry. Magistrate Judge Cole of this Court recently examined this question of how courts undertake a "balanced" approach to determining whether an attorney's communication with a business consultant (such as an investment banker) remains privileged in an environment in which attorneys need to be able to have confidential communications with consultants in order to render adequate legal advice. *BankDirect Capital Fin., Inc. v. Capital Premium Fin., Inc.,* 326 F.R.D. 176, 182-83 (N.D. Ill. 2018) (Cole, M.J.), citing *Stafford Trading* at *3. As Judge Cole noted, "without the involvement and contributions of the non-lawyer" in a business transaction context, "legal advice would essentially be impracticable." *Id.* at 181-82. Judge Cole's opinion in *BankDirect*, and the authorities he cites, establish that the involvement of non-attorney consultants in a communication with counsel does not defeat the privilege, as long as the consultant is helping counsel give effective legal advice on business matters, by explaining concepts within the scope of the consultant's experience. *Id.* at 182. In *BankDirect*, the consultant was an investment banker, and the subject matters concerned financial issues.

C.     Analysis

This Court sees no reason to limit *BankDirect* to its facts. Here, the subject matters concerned pay equity, and it is evident to the Court from its *in camera* review of the Report that the Gallagher Report's conclusions were requested by counsel for the purpose of counsel's rendering legal advice to Defendant on pay equity issues. In addition, as noted above, the Court finds that the Report and its associated correspondence support a conclusion that counsel engaged

the Gallagher firm (and commissioned the Report) for the purpose of counsel's rendering effective legal advice, and that Defendant and counsel intended to keep the report confidential and took reasonable steps to do so.

Nonetheless, the Court has a few outstanding questions and has sought to confirm them with Defendant's counsel, who, as an officer of the Court, has made representations that should be confirmed by affidavit in lieu of a full hearing. These questions were summarized above and were listed in the Court's minute order of June 14, 2019; they primarily concerned whether Defendant has shared the Gallagher Report with any persons outside Defendant's management control group so as to waive the privilege. Defense counsel has represented that Defendant has not done so, although that conclusion is not definitively apparent from the privilege log when combined with the related email correspondence submitted for *in camera* review. *See generally* Jerold S. Solovy and Robert Byman, "It's As Easy As Falling Off a Privilege Log," National Law Journal (July 24, 2000) ("the log has to let the reader know that the confidentiality of the communications has been maintained . . . if the document was copied to twenty other persons, it is not apparent that the communication was in confidence unless and until you explain the circumstances for those other people receiving copies") (available on the Court's website). Also, the Court is seeking to review *in camera* any additional engagement letters (and it appears to the Court that at least one such document does exist) describing the work to be undertaken by the Gallagher firm in connection with the Gallagher Report, to confirm the Court's conclusion that the purpose of the Report was to aid counsel in rendering legal advice, and not simply to communicate business advice. For the same reason, the Court has offered Defendant the opportunity to clarify how the purpose of the Report was indeed to aid counsel in rendering legal advice, notwithstanding the brief portion of the Rule 30(b)(6) testimony which could be read to suggest otherwise.

The Court will rule promptly upon Plaintiff's request to compel production of the Gallagher Report upon the Court's receipt of the foregoing information. A dearth of information on these issues may well affect the Court's ruling.

### III. About That Privilege Log....

Finally, the Court's minute order seeks to ensure that any and all responsive pay equity reports have either been produced or logged on a privilege log (if privilege is asserted over them). The Court further directs the Parties' attention to its website, under "Privilege Logs." These logs, at their outset, should include: (1) the name and capacity of each individual from whom or to whom a document and any attachments were sent (including which persons are lawyers); (2) the date of the document and any attachments; (3) the type of document; (4) the Bates numbers of the documents, (5) the nature of the privilege asserted; and (6) a description of the subject matter in sufficient detail to determine if legal advice was sought or revealed, or if the document constitutes work product. *See RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013).

Candidly, a description of logged document as a "[r]eport commissioned and completed under the direction of Rush legal counsel for the purpose of providing legal advice" does not provide detail sufficient to allow the Court to determine whether legal advice was sought or revealed. It's a mere conclusory statement. A party cannot meet its burden of establishing privilege by saying, in effect, "I have here a privileged document." Solovy & Byman. "To meet your burden, you have to provide a description which, when read, establishes privileged content." *Id.* Here, a description such as "report, prepared at the direction of Rush's counsel, providing counsel with a pay equity analysis within Rush for the purpose of assisting counsel's provision of legal advice to Rush on pay equity issues" might well have sufficed. It would be within the Court's discretion to deny the privilege based on Defendant's inadequate log entry, but our discretion also

includes giving Defendant an opportunity to get it right the second time, and preserving privilege protection that in the Court's view was important to Defendant with respect to the Gallagher Report.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel is granted in part. Defendant is ordered to produce the Donald Trump Mask for inspection at a mutually agreeable location within seven days, to preserve the Mask, and to provide the Court with a written status report no later than June 25, 2019, describing the circumstances if for any reason the Mask has not been preserved or has been discarded or destroyed. Further, Plaintiff's Motion to Compel is entered and continued as to the Gallagher Report, pending Defendant's submission, by the end of the day on June 21, of the information requested in the Court's minute order dated June 14, 2019.

**SO ORDERED.**

ENTER:

*[signature]*

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: June 14, 2019**