**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NORMA MELGOZA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17-cv-6819 |
| vs. | ) | |
| | ) | Honorable Mary Rowland |
| RUSH UNIVERSITY MEDICAL CENTER, | ) | Honorable Gabriel A. Fuentes |
| | ) | Jury Trial Demanded |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.     ARGUMENT .......................................................................................................... 3

     A.      PLAINTIFF HAS FAILED TO COMPLY WITH LOCAL RULE 56.1 .............. 3

     B.      MELGOZA IS PAID THE SAME AS HER MALE COUNTERPARTS. ............ 4

         i.      Male Vice Presidents .................................................................. 4

         ii.      Male Associate Vice Presidents................................................. 6

         iii.      Statutory Defense ...................................................................... 7

         iv.      Retaliation ................................................................................. 8

     C.      RUSH HAS NOT DISCRIMINATED AGAINST MELGOZA OR
          RETALIATED AGAINST HER. ..................................................................... 9

         i.      Hostile Work Environment ........................................................ 9

              (a)      Vicarious Liability ...................................................... 10

              (b)      The Ellerth/Faragher Affirmative Defense ................... 10

         ii.      Discrimination........................................................................... 11

              (a)      Unequal Pay / Job Elimination ..................................... 11

              (b)      Failure to Prepare for Interviews / Failure to Promote ................. 13

         iii.      Retaliation ................................................................................. 13

     D.      RUSH DID NOT VIOLATE THE IHRA............................................................ 14

         i.      Failure to Exhaust Administrative Remedies ............................ 14

         ii.      Discrimination, Harassment and Retaliation Claims Under the IHRA .... 14

     E.      MELGOZA IS NOT ENTITLED TO PUNITIVE DAMAGES. ........................ 15

         i.      EPA.......................................................................................... 15

         ii.      Title VII .................................................................................. 15

III.     CONCLUSION...................................................................................................... 15

61382232v.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ammons v. Aramark Unif. Servs., Inc.*,
368 F.3d 809 (7th Cir. 2004) ................................................. 3

*Anderson v. Donahoe*,
699 F.3d 989 (7th Cir. 2012) ................................................. 4

*Bank Leumi Le-Israel, B.M. v. Lee*,
928 F.2d 232 (7th Cir. 1991) ................................................ 15

*Basta v. Am. Hotel Register Co.*,
872 F. Supp. 2d 694 (N.D. Ill. 2012) ................................... 3, 4

*Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*,
277 F.3d 882 (7th Cir. 2001) ............................................... 13

*Cooke v. Stefani Management Serv.*,
250 F.3d 564 (7th Cir. 2001) ............................................... 16

*Cullen v. Indiana Univ. Bd. of Trustees*,
338 F.3d 693 (7th Cir. 2003) ............................................ 5, 6

*David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*,
846 F.3d 216 (7th Cir. 2017) ................................................. 5

*De v. City of Chicago*,
912 F. Supp. 2d 709 (N.D. Ill. 2012) ................................... 3, 4

*Dey v. Colt Constr. & Development Co.*,
28 F.3d 1446 (7th Cir. 1994) ................................................. 8

*Everett v. Cook Cty*,
704 F. Supp. 2d 794 (N.D. Ill. 2010) ...................................... 3

*Fallon v. State of Ill.*,
882 F.2d 1206 (7th Cir. 1989) .............................................. 13

*Frey v. Coleman*,
141 F. Supp. 3d 873 (N.D. Ill. 2015) .................................... 15

*Gen. Ins. Co. of Am. v. Clark Mall Corp.*,
No. 08-2787, 2010 WL 2901788 (N.D. Ill. July 26, 2010) ........... 4

61382232v.1

*Huang v. Continental Cas. Co.*,
2012 WL 104628 (N.D. Ill. Jan. 12, 2012) ....................................................13, 15

*Jaburek v. Foxx*,
813 F.3d 626 (7th Cir. 2016) .............................................................................4, 5

*Jackson v. County of Racine*,
474 F.3d 493 (7th Cir. 2007) ...............................................................................11

*Johnson v. West*,
218 F.3d 725 (7th Cir. 2000) ...............................................................................10

*Kaplan v. Premiere Radio Networks, Inc.*,
2002 WL 31356442 (N.D. Ill. Oct. 17, 2002) ......................................................10

*Leong v. SAP Am., Inc.*,
67 F. Supp. 3d 972 (N.D. Ill. 2014) ...............................................................4, 7, 9

*Raymond v. Ameritech Corp.*,
442 F.3d 600 (7th Cir. 2006) .................................................................................3

*Rinaldi v. World Book, Inc.*,
2002 WL 172449 (N.D. Ill. Feb. 4, 2002) ............................................................15

*Scruggs v. Garst Seed Co.*,
587 F.3d 832 (7th Cir. 2009) ...............................................................................10

*Stopka v. Alliance of Am. Insurers*,
141 F.3d 681 (7th Cir. 1998) .................................................................................5

*Swidnicki v. Brunswick Corp.*,
23 F. Supp. 3d 921 (N.D. Ill. 2014) .....................................................................15

*Warren v. Solo Cup Co.*,
516 F.3d 627 (7th Cir. 2008) ...............................................................................11

**Statutes**

775 ILCS 5/8-111(D)............................................................................................15

29 U.S.C. § 206(d)(1) .............................................................................................8

29 U.S.C. § 255(a) ..................................................................................................5

Equal Pay Act, Title VII ................................................................................ *passim*

**Other Authorities**

29 C.F.R. § 1620.14(a)............................................................................................5

61382232v.1

29 C.F.R. § 1620.15(a)............................................................................................5, 6

Local Rule 56.1....................................................................................................3

Local Rule 56.1(b)(3)(B) ........................................................................................3

61382232v.1

# I.  INTRODUCTION

The Equal Pay Act ("EPA"), Title VII, and the Illinois Human Rights Act ("IHRA") are not statutes that allow for recovery based on a person's subjective belief of unequal or discriminatory treatment. Plaintiff Norma Melgoza's ("Melgoza") papers submitted in response to Defendant Rush University Medical Center's ("Rush") motion for summary judgment confirm that all of Melgoza's claims are premised solely on her subjective belief that Rush has discriminated against her. She offers no actual evidence of discrimination or harassment. Melgoza's claims thus fail and the Court should grant Rush's motion for summary judgment.

Melgoza's EPA and Title VII/IHRA pay disparity claims fail because she cannot meet her burden to prove that her job entailed substantially equal skill, effort, and responsibility to any or all of the alleged male comparators' jobs. Melgoza first improperly expands the scope of her claims to include her current role as a Director. But it is axiomatic that a plaintiff cannot amend her complaint in a response to a motion for summary judgment. Melgoza's operative complaint is clear that her EPA claim is limited to her time as an Associate Vice President ("AVP"), a role she held from 2014 to 2016, the relevant time period. Moreover, rather than focus on the totality of the comparator positions *vis a vis* her role as an Associate Vice President, which is what the law requires, Melgoza cherry picks only certain responsibilities for each comparator and then asserts that this is sufficient to establish a *prima facie* case. When the comparator positions are reviewed in total, however, there is no question that Melgoza cannot meet her burden. Further, the record makes clear that Melgoza **_made more_** than some of her comparators.

Additionally, Melgoza's papers confirm that Rush sets pay based on factors that have nothing to do with gender. The parties do not dispute that Rush sets Associate Vice President pay based on job description, responsibilities, skills and education, and that Rush used market data to determine pay. The parties do not dispute that each employee's performance is evaluated

1

annually and a manager makes the decision as to how much to increase the employee's salary based on performance. Critically, Melgoza has identified **_female_** comparators who made more than her identified male comparators. This confirms that Rush does not make compensation decisions based on gender. Finally, there is no evidence to support Melgoza's subjective belief that her Associate Vice President position was eliminated based on any complaints about pay. Thus, all claims relating to her pay are plainly meritless and must be dismissed.

As to Melgoza's Title VII and IHRA claims, these too fail primarily because she did not suffer from any conduct that is objectively offensive, and she did not suffer any adverse employment action as a result of any complaints. Nothing she offers in response to Rush's motion for summary judgment remotely rises to the necessary showing on either of these elements. Furthermore, even if any of these were true, the allegedly offending actions took place well after any alleged protected conduct or objectively offensive conduct, and to the extent Rush was aware of any potentially offending conduct, it investigated that conduct and acted in compliance with its well-defined policies prohibiting discrimination, harassment, and retaliation.

In sum, Melgoza's papers do not identify any evidence to support her claims because there is none. For the reasons set forth below, and for those set forth in Rush's opening papers in support, the Court should grant Rush's motion for summary judgment, dismiss Plaintiff's amended complaint with prejudice, enter judgment on Rush's behalf, and award Rush any relief that the Court deems just and proper.

61382232v.1

## II.    ARGUMENT

### A.    PLAINTIFF HAS FAILED TO COMPLY WITH LOCAL RULE 56.1

Local Rule 56.1 is strictly enforced.[1] *Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006); *Everett v. Cook Cty*, 704 F. Supp. 2d 794, 796, n.1 (N.D. Ill. 2010). The vast majority of Melgoza's responses[2] to Rush's statement of material facts contain non-responsive additional facts that exceed the scope of Rush's statement. *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (no abuse of discretion in striking responses adding additional facts); *De v. City of Chicago*, 912 F. Supp. 2d 709, 714-5 (N.D. Ill. 2012) ("nonmoving party [may not] add additional facts to [a]…response…."). In addition, some[3] either misstate the cited record or are unsupported by the record. *De*, 912 F. Supp. 2d at 712 (improper for a party to misstate the cited record.); *Basta v. Am. Hotel Register Co.*, 872 F. Supp. 2d 694, 700 (N.D. Ill. 2012) (striking responses not substantiated by evidence). Further, some[4] contain hearsay. *De*, 912 F. Supp. 2d at 714 ("Hearsay is…inadmissible at summary judgment…."). Finally, many[5] contain argumentative or conclusory allegations. *De*, 912 F. Supp. 2d at 713 (striking such responses.). The Court should disregard these deficient responses.

Melgoza's statements of additional fact ("SAF") contain similar violations. First, many either misstate the cited record or are unsupported. *De*, 912 F. Supp. 2d at 712; *Basta*, 872 F. Supp. 2d at 700. Second, many contain inadmissible hearsay. *De*, 912 F. Supp. 2d at 714. Third,

---

[1] Rush acknowledges that it submitted 98 separate statements of fact without leave of court. However, Rush submits that, while a technical violation of Local Rule 56.1, the statements of fact are all logically connected, supported by references to the record and, given the nature and complexity of the case, necessary and material to resolve this dispute. Thus, Rush's statement of facts is compliant with the spirit of Local Rule 56.1. Moreover, Melgoza does not seek to strike any them, and in fact, responded to all of them.

[2] *See* Dkt. No. 167, at ¶¶ 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 22, 23, 25, 26, 27, 28, 29, 30, 31, 32, 35, 36, 37, 38, 39, 41, 42, 43, 44, 51, 53, 54, 55, 56, 57, 58, 63, 64, 65, 67, 68, 69, 70, 77, 78, 82, 83, 84, 85, 86, 87, 88, 89, 90, 94.

[3] *See* Dkt. No. 167, at ¶¶ 7, 8, 9, 10, 18, 25, 26, 27, 28, 30, 31, 32, 35, 36, 37, 52, 53, 54, 55, 61, 71, 89, 92, 94.

[4] *See* Dkt. No. 167, at ¶¶ 7, 8, 9, 10, 18, 19, 30, 31, 32, 35, 36, 37, 43, 51, 52, 53, 54, 55, 61, 71, 89, 94.

[5] *See* Dkt. No. 167, at ¶¶ 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, 17, 18, 19, 30, 31, 35, 36, 37, 38, 39, 41, 42, 43, 44, 51, 54, 55, 56, 57, 58, 63, 64, 65, 69, 78, 84, 85, 86, 87, 88, 89, 94.

some contain argumentative and conclusory allegations in her Amended Complaint that Rush has denied. *Gen. Ins. Co. of Am. v. Clark Mall Corp*., No. 08-2787, 2010 WL 2901788, at *5 (N.D. Ill. July 26, 2010) "[a]llegations in a complaint are not evidence."). The Court should disregard the SAF identified in Rush's response to the SAF.

### B.     MELGOZA IS PAID THE SAME AS HER MALE COUNTERPARTS.

It is undisputed that Melgoza bears the burden at summary judgment to provide the details about her comparators. *Leong v. SAP Am., Inc.*, 67 F. Supp. 3d 972, 985 (N.D. Ill. 2014). Melgoza has not met her burden. *Jaburek v. Foxx*, 813 F.3d 626, 632 (7th Cir. 2016).

Melgoza's amended complaint specifically alleges that "***[t]hroughout her tenure as an AVP***, Rush paid Melgoza…less per year than her male and/or non-Mexican-American colleagues…." (Dkt. No. 167 at ¶ 53.) Yet, Melgoza's papers in response include her current role as Director[6] (*id*.); which is wholly improper. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) (a plaintiff may not amend her complaint through arguments in her brief in opposition to a motion for summary judgment). With this in mind, there is no question that Melgoza has failed to establish a *prima facie* case for her EPA claim for the relevant time period of September 21, 2014 through July 14, 2016 (the "relevant time period").[7]

### i.     Male Vice Presidents

Melgoza has not established a pay disparity between her and her alleged male comparators during the relevant time period. Melgoza proffers Mulroe's total compensation for only 2018, which is outside the relevant time period. (Dkt. No. 168 at ¶ 44.) Melgoza fails to cite record evidence for Sonnenschein's total compensation between 2015 through 2018, and the

---

[6] Melgoza argues, for the first time in her Response, that her position "as Director [is] substantially equal to Rush AVPs Cooper, Correa, Ellis and Strong (while he was an AVP)." (Dkt. No. 167, at ¶ 53.)

[7] Rush does not concede that Melgoza has presented any evidence as to Rush's knowledge of any EPA violations, or reckless disregard for the possibility that it was violating the EPA such that the statute of limitations is three years. 29 U.S.C. § 255(a).

evidence that she does cite is outside the relevant time period. (*Id.* at ¶ 47.) She also glosses over the fact that both Mulroe and Sonnenschein became Vice President ("VP") in 2010 and 2006, respectively, while she was still an Assistant Vice President. (*Id.* at ¶¶ 8, 44, 47.) Finally, Strong was promoted to VP in 2018, outside the relevant time period. (*Id.* at ¶ 45.)

Nor has Melgoza established that she was doing work that required "equal skill, effort and responsibility" as to any of these VPs. (Dkt. No. 152 at ¶¶ 54-56.) Indeed, "the crucial inquiry is whether the jobs to be compared have a common core of tasks[;] whether a significant portion of the two jobs is identical." *Jaburek*, 813 F.3d at 632; *Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003). The terms "equal skill," "effort" and "responsibility" "constitute separate tests, each of which must be met in order for the equal pay standard to apply." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 230 (7th Cir. 2017); *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 686 (7th Cir. 1998); 29 C.F.R. § 1620.14(a). "Skill includes consideration of such factors as experience, training, education, and ability." 29 C.F.R. § 1620.15(a). "Effort is concerned with the measurement of the physical or mental exertion needed for the performance of a job." *Id.* And, "responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." *Id.*

VPs at Rush have a broader range of responsibility, more people, and more resources associated with their job than an AVP. (Dkt. No. 152 at ¶ 54.) But these are not the only relevant criteria: "Some responsibilities have a lot of people and a lot of resources, but it might be a department or area that can work fairly independent of others where there are other areas that have to work collaboratively across many parts of the medical center; so they may not have as many people and resources, but the leadership required to work with others becomes an

61382232v.1

important difference in criteria that could result in a higher title than would be given just based on the number of resources and people associated with the job." *Id.*

Melgoza focuses solely on the number of departments that she oversees in comparison with the alleged VP comparators; she states that because she oversees the same number of departments as Strong, he must be a comparator. (Dkt. No. 166 at 6), This, simply put, is not sufficient for a reasonable juror could conclude that any VP role was sufficiently similar to Melgoza's AVP role. *Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003) (no *prima facie* case without equal responsibilities).

### ii.     Male Associate Vice Presidents

 Nor are Melgoza's alleged AVP comparators appropriate. For example, Cooper[8] was promoted to AVP in March 2015 earning $159,500, much less than Melgoza's 2015 compensation. (Dkt. No. 168 at ¶ 53, Dkt. No. 167 at ¶ 47.) Ellis was not promoted to AVP until 2018, outside the relevant time frame. (Dkt. No. 168 at ¶ 55.) Moreover, Melgoza attempts to set forth Strong's total compensation between 2015 through 2018, but in addition to being outside the relevant time frame, she also fails to properly cite to the record in support of her assertion. (Dkt. No. 168 at ¶ 49.)

Nor has Melgoza established that she was doing work that required "equal skill, effort and responsibility" as to any of them. Generally speaking, AVPs are responsible for leadership of their departments, driving performance, motivating individuals, creating and articulating a vision for where they want to take their operation or function, driving employee engagement, having a passion for the role, and ensuring Rush is delivering the utmost quality care for its patients. (Dkt.

---

[8] Cooper was promoted to Chief Administrative Officer for maternal and infant services in December 2018. (Dkt. No. 168 at ¶ 53.) Thus, his salary at that time is outside the relevant time frame.

No. 167 at ¶ 55.) AVP positions cannot be compared by number of departments and dollar amount of revenue. (Dkt. No. 167 at ¶ 56.)

As with the alleged VP comparators, Melgoza attempts to establish an equal role with AVPs solely through the number of departments that she oversaw. In other words, Melgoza argues that because she oversaw the same number or more departments than her purported AVP comparators, she performed equal work to them. But the law requires that other factors that must be assessed. *Leong v. SAP Am., Inc.*, 67 F. Supp. 3d 972, 985 (N.D. Ill. 2014). Melgoza ignores undisputed differences between her and her purported comparators. For instance, as an AVP, Correa "managed an entire service line that…was nearly 500 employees that made up the cancer center. I don't recall the size of my budget, but it was very, very large. It was also at that time the areas that I was responsible for were specifically identified as the most profitable service line that we had at Rush at the time." (Response to Plaintiff's SAF at ¶ 51.) Strong managed an independent living facility in addition to overseeing his departments,. (*Id.* at ¶ 49.)

Because Melgoza cannot meet her burden to demonstrate that her AVP position entailed substantially equal skill, effort, and responsibility to any other AVP positions, Rush is entitled to summary judgment on her EPA claim.

### iii. Statutory Defense

Even assuming that Melgoza can assert a claim through the present, and has established a *prima facie* case (which she cannot), Rush has established that any pay disparity is due to a factor other than sex. 29 U.S.C. § 206(d)(1); *Dey v. Colt Constr. & Development Co.*, 28 F.3d 1446, 1462 (7th Cir. 1994). Indeed, the undisputed facts demonstrate that bona fide business-related reasons justify any discrepancies that do exist. (Dkt. No. 167 at ¶ 41.)

Melgoza does not dispute that AVPs are slated into a salary structure based on job description, responsibilities, skills and education; that Rush used market data to develop a salary

7

range for each grade level; or that salary ranges are revised annually based on salary budget surveys. (*Id.*) Positions carrying varying responsibilities, educational requirements, and skills justify differences in pay. Even differences in pay within a particular grade are justified. Tellingly, Melgoza does not dispute that each employee's performance is evaluated annually and a manager makes the decision as to how much to increase the employee's salary based on performance as well as the position of base salary within the range for his or her grade level. (*Id.*) Further undermining Melgoza's claim is the fact that she has identified ***female*** comparators who made more than the male comparators. (Dkt. No. 168 at ¶¶ 56-67.)

This demonstrates that Rush does not make pay decisions generally based on gender,[9] and as such, Rush is entitled to summary judgment. (Dkt. No. 167 at ¶ 41.)

### iv. Retaliation

Melgoza does not identify any ***gender-based*** pay discrepancies other than her complaint in 2006.[10] (Dkt. No. 167 at ¶ 66.) As an initial matter, there is no temporal connection with this complaint and Melgoza's job reclassification. *City of Fort Wayne*, 241 F.3d 597, 603 (7th Cir. 2001). After 2006, Melgoza only complained about her wages generally and asked for a compensation review several times. (Dkt. No. 168 at ¶¶ 27, 30.) Moreover, general complaints about wages are insufficient to state a claim for retaliation under the EPA. *Leong*, 67 F. Supp. 3d at 986. Nor has Melgoza established a causal connection between her April 14, 2015 request for a pay equity review and the elimination of her AVP position. Instead, she points to events that occurred *after* the elimination of her AVP position. (Response at 19-20.) Melgoza thus cannot

---

[9] Melgoza's references to other compensation studies and her alleged requests for an equity review in attempt to show that Rush's explanation for pay discrepancies is not bona fide are unavailing in light of her admissions regarding how Rush sets compensation. (Response at pp. 8-9.)
[10] This alleged statutorily protected expression falls outside the statute of limitations in this case.

61382232v.1

offer any evidence that her position was eliminated *because of* her April 14, 2015 request for a pay equity review.

In fact, the elimination of Melgoza's AVP position was motivated by a legitimate restructuring decision. Melgoza does not dispute that Rush often restructured and reassigned departments. (Dkt. No. 167 at ¶ 30.) Melgoza does not dispute that three of the departments were moved to the cancer service line. (*Id*. at ¶ 37.) Nor does Melgoza dispute that with the migration of these three departments, her remaining portfolio of departments did not warrant an AVP position. (*Id*.) Thus, the only "evidence" Melgoza submits to show that the elimination of her AVP position was retaliatory is Mulroe's involvement in her job elimination, and that he was aware of her complaints regarding her pay. (Response at 20.) This is not sufficient for a jury to find a causal connection between Melgoza's April 14, 2015 request for a pay equity review, and the elimination of her AVP position on July 14, 2016.

For these reasons, Melgoza's EPA retaliation claim fails.

## C.  RUSH HAS NOT DISCRIMINATED AGAINST MELGOZA OR RETALIATED AGAINST HER.

### i.  Hostile Work Environment

Melgoza's hostile work environment claim stems solely from three alleged incidents involving three different individuals that occurred over the course of several years. As Rush established in its opening papers, none are objectively offensive. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840-41 (7th Cir. 2009) ("Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment."). All three are classic examples of non-actionable stray remarks and are based on her subjective twisting of the alleged remarks, and are not objectively offensive. *Kaplan v. Premiere Radio Networks, Inc.*,

2002 WL 31356442, *7 (N.D. Ill. Oct. 17, 2002) (employee's subjective belief regarding her manager's conduct did not establish a hostile work environment claim).

### (a)    Vicarious Liability

Even if the alleged harassment created a hostile work environment (which it did not), Melgoza's claim fails because there is no basis for imposing corporate liability on Rush. Melgoza has failed to submit evidence that she was subjected to tangible employment action caused by Dandorph's, Dr. Bianco's, or Dr. DeCresce's purported harassment of Melgoza.[11] *See Johnson v. West*, 218 F.3d 725, 731-32 (7th Cir. 2000) (no tangible employment action where plaintiff's dismissal was not *result of* supervisor's harassment).

### (b)    The *Ellerth/Faragher* Affirmative Defense

Even if Melgoza can establish a causal connection (she cannot), Rush's *Ellerth/Faragher* defense precludes liability. Melgoza does not dispute that Rush maintains an effective policy prohibiting harassment, provides several complaint avenues, and conducts harassment training for all employees. (Dkt. No. 167 at ¶¶ 6-14.)

Moreover, Melgoza did not complain to Rush HR or otherwise alert the Company to Dandorph's and Dr. Bianco's purported comments. (Response, at 14.) As to the Mask, Melgoza does not dispute that Rush thoroughly investigated her complaint, could not validate Melgoza's allegations, and took prompt remedial action by instructing Dr. DeCresce to remove the Mask from Rush property. (Dkt. No. 167 at ¶¶ 85-86.)

For this reason, the Court should grant Rush's motion for summary judgment. *Jackson v. County of Racine*, 474 F.3d 493, 502 (7th Cir. 2007) (conducting a thorough investigation and

---

[11] Rush assumes for purposes of this argument only that Dandorph, Dr. Bianco and Dr. DeCresce would be considered supervisors.

taking steps reasonably calculated to prevent further harassment is an appropriate response to plaintiff's harassment complaint).

### ii. Discrimination

#### (a) Unequal Pay / Job Elimination

Melgoza has not identified and cannot identify any similarly-situated male and/or non-Mexican-American employees who were more favorably treated with respect to pay or job elimination. As set forth in Section B(i) and (ii), Melgoza has not established that the identified male VP and AVP comparators are "similarly situated." *Warren v. Solo Cup Co.*, 516 F.3d 627, 630-1 (7th Cir. 2008) ("the employee [must be] comparable…in all material respects.").

Moreover, Melgoza has not established a pay disparity for most of the female comparators. For example, Lulla's salary ranged from $189,398 to $227,318 between 2015 and 2017, but only her salary in 2015 and 2016 is relevant. (Dkt. No. 168 at ¶ 67.) Melgoza's salary was within this range during the relevant time frame. (Dkt. No. 167 at ¶¶ 47-48.) Melgoza attempts to set forth Nedved's and Pilipczuk's compensation between 2015 through 2018, but fails to cite any evidence to support her assertion, in addition to being outside the relevant time frame. (Dkt. No. 168 at ¶¶ 59, 63.) Daily[12] was not promoted to AVP until summer 2017 (outside the relevant time frame), and her salary was less than Melgoza's at that time. (Dkt. No. 168 at ¶ 61; Dkt. No. 167 at ¶ 49.) And Stacks' salary in 2015 was $187,000 and ranged from $206,542 to $247,322 between 2016 and 2018. (Dkt. No. 168 at ¶ 56.) Melgoza's salary was also within this range during the relevant time frame. (Dkt. No. 167 at ¶¶ 47, 48.) Finally, Melgoza fails to proffer evidence regarding Stack's pay at all. (Dkt. No. 168 at ¶ 94.)

---

[12] Melgoza does not argue that she is similarly situated to Daily. (Response at p. 11.)

61382232v.1

Nor did Melgoza establish that the female AVPs are "similarly situated." Melgoza asserts that Gupta was promoted to Chief Quality Officer in 2015, but offers nothing in terms of Gupta's responsibilities in that role. (*Id.* at ¶¶ 64-65.) With respect to Lulla, Melgoza proffers that her AVP role included "a collaborative partnership with the academic, medical practice, and corporate programs in Rush," but does not contend that she had similar responsibly to partner with the academic, medical practice and corporate programs at Rush. (*Id.* at ¶ 67.) Similarly, throughout 2014, 2015 and 2016, Nedved maintained dual roles as AVP of Professional Nursing and interim AVP for Psychiatric Behavioral Health (2014) and interim Chief Nursing Officer (2015-2016); Melgoza did not.[13] (*Id.* at ¶ 58.) Melgoza provides no details regarding Pilipczuk's role as AVP, Nursing Financial and Resource Management Systems, and Pilipczuk's role as AVP, Hospital Operations, falls outside the relevant time period. (*Id.* at ¶ 62.) Melgoza's proffer regarding Stacks' AVP role and Struck's role are just as sparse. (*Id.* at ¶¶ 56, 94.)

Moreover, Melgoza concedes that Stacks, Nedved, Daily and Pilipczuk did not report to Mulroe, Melgoza's direct supervisor, during the relevant time, and fails to identify any direct supervisor for them. (*Id.* at ¶¶ 56, 58, 60, 62, 65, 67, 94.) Finally, Melgoza glosses over the fact that Struck, as assistant general counsel and deputy general counsel in the Office of Legal Affairs, was required to hold a law degree for her AVP position. (*Id.* at ¶ 94.)

Even assuming that Melgoza had shown her alleged comparators were "similarly situated" (she did not), her claim still fails. Bona-fide business-related reasons justified any wage differentials and the elimination of Melgoza's AVP position. As discussed more fully in Section II(B)(iii), positions carry varying responsibilities, educational requirements, and skills justify

---

[13] Nedved also held the interim cancer service administrator position from February 2017 through November 2018 - in addition to her AVP role - but this is outside the relevant time frame. (Rush's Response to Plaintiff's SAF at ¶ 59.)

differences in pay.[14] As to the elimination of Melgoza's AVP position, Melgoza does not dispute that the reorganization was made to allow for better integration and coordination of care for Rush's cancer patients. (Dkt. No. 167 at ¶ 29.) Specifically, once the decision was made to transfer three of Melgoza's departments to the cancer service line, her remaining portfolio of departments did not warrant an AVP position. (*Id.* at ¶ 37.)

Thus, Melgoza cannot demonstrate pretext. *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 894 (7th Cir. 2001).

### (b)    Failure to Prepare for Interviews / Failure to Promote

Melgoza did not respond to Rush's arguments in favor of entering summary judgment on these claims, and thus concedes them. *Huang v. Continental Cas. Co.*, 2012 WL 104628, *6 (N.D. Ill. Jan. 12, 2012) ("A party abandons a claim by failing to address it in his response brief to a motion for summary judgment.").

### iii.    Retaliation

Melgoza's Title VII retaliation claim also fails. For the reasons set forth in Section II(B)(iv), Melgoza has failed to establish a causal connection between any *gender based* pay discrepancy complaints (within the statute of limitations) and the elimination of her AVP position. Melgoza devotes exactly three sentences in her Response to her contention that Rush retaliated against her for complaining about Rush's failure to hire and promote Mexican-Americans. (Response at 20.) She fails to identify what adverse actions she allegedly suffered or the facts supporting the unidentified causal link.

---

[14] A successful affirmative defense to an EPA claim will likewise serve as a valid defense to an unequal pay claim brought under Title VII. *Fallon v. State of Ill.*, 882 F.2d 1206, 1213 (7th Cir. 1989).

61382232v.1

While she devotes a full page to her argument that Rush retaliated against her by failing to promote her for complaining about the elimination of her AVP position and filing the litigation, there is virtually no substance provided. (Response at 21-22.) In fact, Melgoza cannot establish that the failure to promote her to the CAO, cancer service line position, the only position identified in her Response, was motivated by her protected activity. Again, Melgoza has offered no evidence that the failure to promote her was *because of* her complaints. In fact, Melgoza was not promoted because she was not qualified for the CAO, cancer service line position.[15] (Dkt. No. 167 at ¶ 87.) Melgoza cannot present evidence from which a reasonable jury could conclude that this explanation is pretextual.

### D. RUSH DID NOT VIOLATE THE IHRA.

#### i. Failure to Exhaust Administrative Remedies

Contrary to Melgoza's assertion, without a final order from the IHRA, this Court lacks jurisdiction over her IHRA claims. 775 ILCS 5/8-111(D);[16] *Swidnicki v. Brunswick Corp.*, 23 F. Supp. 3d 921, 930 (N.D. Ill. 2014).

#### ii. Discrimination, Harassment and Retaliation Claims Under the IHRA

Nonetheless, Melgoza alleges nearly identical violations of both the IHRA and Title VII and both statutes are interpreted in the same manner. *Frey v. Coleman*, 141 F. Supp. 3d 873, 879 n. 4 (N.D. Ill. 2015). Because Melgoza's Title VII claims fail, so too do her IHRA claims.

---

[15] Struck was appointed Acting Vice President and Chief Administrative Officer, Oncology Service Line in 2019. (Dkt. No. 168 at ¶ 94.)

[16] Moreover, a technical failure to plead an affirmative defense is not fatal where, as here, the parties have argued the defense. *See Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 235 (7th Cir. 1991).

61382232v.1

### E.  MELGOZA IS NOT ENTITLED TO PUNITIVE DAMAGES.

If the Court determines summary judgment is not appropriate as to liability, Rush is entitled to summary judgment on Melgoza's claims for liquidated and punitive damages.[17]

#### i.  EPA

Melgoza does not dispute that Rush maintained policies related to the EPA, took reasonable non-discriminatory steps to set compensation, and put a procedure in place for a pay equity review to determine whether an employee is being compensated fairly. (Dkt. No. 167 at ¶¶ 18-19, 41, 68.) Accordingly, Melgoza's liquidated damages claim fails. *Rinaldi v. World Book, Inc.*, 2002 WL 172449, *1 (N.D. Ill. Feb. 4, 2002).

#### ii.  Title VII

Melgoza does not dispute that Rush has made good faith efforts to implement Title VII in the workplace by: (1) maintaining policies prohibiting discrimination, harassment, and retaliation, which provide employees alternate channels to report complaints; (2) providing extensive training related to anti-discrimination, anti-harassment and diversity; and (3) thoroughly investigating complaints. (Dkt No. 167 at ¶¶ 6-12, 14, 85.) Thus, Melgoza is not entitled to punitive damages on her Title VII claim. *Cooke v. Stefani Management Serv.*, 250 F.3d 564 (7th Cir. 2001) (striking punitive damages award where employer established the good faith defense).

## III.  CONCLUSION

Accordingly, the Court should grant Rush's motion, enter judgment on Rush's behalf, dismiss Plaintiff's lawsuit with prejudice, and award Rush any relief that the Court deems just and proper.

---

[17] Melgoza concedes, by failing to address it in her Response, that punitive damages are unavailable under the IHRA. *Huang*, 2012 WL 104628 at *6.

**DATED: February 5, 2020**

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ James C. Goodfellow, Jr.*
James C. Goodfellow, Jr.
Attorney for Defendant
Rush University Medical Center

Amanda A. Sonneborn
James C. Goodfellow, Jr.
Thomas Horan
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
E-mail: asonneborn@seyfarth.com
jgoodfellow@seyfarth.com
thoran@seyfarth.com

*Attorneys for Rush University Medical Center*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, does hereby certify that he served the foregoing document

with the Clerk of the Court for filing and uploading to the CM/ECF system, which will send

notification of such filing to the following at their e-mail addresses on file with the Court:

Ashley Lauren Orler
Rebekah Susan Mintzer
Melanie Elysia Baker
Golan Christie Taglia LLP
70 W. Madison Street
Suite 1500
Chicago, IL 60602
312-263-2300
alorler@gct.law
rsmintzer@gct.law
mebaker@gct.law

*/s/ James C. Goodfellow, Jr.*
James C. Goodfellow, Jr.

61382232v.1